IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-90-222-CV





ROBERT W. DILLARD, DONALD R. DILLARD & DILLARD GRAPHICS, INC.



 APPELLANTS


vs.





NCNB TEXAS NATIONAL BANK,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT



NO. 451,284, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING



 


 




 The plaintiff, NCNB Texas National Bank, recovered
summary judgment against the defendants, Dillard Graphics, Inc.,
Robert W. Dillard, and Donald P. Dillard, on their guarantees. The
defendants appeal. We will reverse the judgment and remand the
cause to the trial court.



THE CONTROVERSY


 On March 10, 1987, Service Typesetting and Printing, Inc.
executed a promissory note in the amount of $124,000, payable to
the order of RepublicBank Austin. On the same day, each defendant
executed a written guarantee in favor of RepublicBank Austin,
obliging them to pay the debt if the maker (Service Typesetting and
Printing, Inc.) failed to do so.

 According to the plaintiff's allegations, the maker
renewed and extended its debt by a series of promissory notes:



1. A note dated April 15, 1987, in the amount of
$124,000, payable to the order of "RepublicBank
Austin."


2. A note dated May 15, 1987, in the amount of
$124,000, payable to the order of "RepublicBank
Austin."


3. A note dated August 17, 1987, in the amount of
$119,190.35, payable to the order of "First
RepublicBank Austin, N.A."


4. A note dated February 12, 1988, in the amount of
$109,090.10, payable to the order of "First
RepublicBank Austin, N.A."



 The maker failed to pay the note dated February 12, 1988. 
The plaintiff sued the maker on the note and the defendants on
their guarantees. To explain its ownership of the debt, the
plaintiff alleged that "First RepublicBank Austin, N.A. was the
successor-in-interest to RepublicBank Austin"; that the Federal
Deposit Insurance Corporation was the receiver of First Republic
Bank Austin, N.A.; and that the plaintiff owned the debt as "the
assignee of the Federal Deposit Insurance Corporation." The
plaintiff prayed for judgment in the amount of $107,028.81, the
amount allegedly owed on the note dated February 12, 1988, pre-judgment and post-judgment interest, attorney's fees, costs, and
general relief.

 After the defendants appeared and answered, the plaintiff
moved for summary judgment, averring that it was "the present owner
and holder of the Note and Guaranties" because it "is the assignee
of the Federal Deposit Insurance Corporation as receiver of First
RepublicBank Austin, N.A. [which] was the successor-in-interest to
RepublicBank Austin." The plaintiff prayed alternatively that it
have partial summary judgment on any issues deemed proper by the
court.

 Before the motion was heard, the defendants interposed
various matters as set out in an amended answer and original
counterclaim. The answer set up a general denial and four
affirmative defenses: usury and breach of contract, based on the 


plaintiff's petition, which allegedly claimed a right to judgment
in excess of the amount of the guarantees; failure of
consideration; and fraud on the part of RepublicBank Austin and
First RepublicBank Austin, N.A., for which the defendants were
entitled to rescission of their guarantees. In their counterclaim
against the plaintiff, the defendants asserted three causes of
action: usury; breach of contract; and fraud. The defendants
pleaded the acts and omissions respecting its three rights of
action as a basis for recovering from the plaintiff compensatory
damages, statutory damages, and exemplary damages, for which the
defendants prayed.

 In an original answer to the defendants' counterclaim,
the plaintiff averred (1) that it was a holder in due course and
(2) that there existed no duty in First RepublicBank Austin that
could give rise to a claim for fraud.



THE SUMMARY JUDGMENT


 On September 7, 1989, the trial court heard the
plaintiff's motion for summary judgment. In a document entitled
"Partial Summary Judgment," the court awarded the plaintiff
judgment against the defendants in the amount of $107,028.81,
together with pre-judgment and post-judgment interest, attorney's
fees to be determined by mediation, and costs of court. In
addition, the document declared that the defendants' counterclaims
against the plaintiff "are hereby dismissed with prejudice" because
the claims were based on "acts and omissions of Republic Bank
Austin, First Republic Bank Austin, N.A., their officers, employees
and agents, which actions and omissions took place before July 29,
1988, the date when First Republic Bank was declared insolvent."

 The defendants moved that the trial court reconsider its
summary judgment. They filed as well a third supplemental answer
and counterclaim in which they alleged certain causes of action and
affirmative defenses in addition to those averred earlier: an
additional action for and a defense of usury based on another
theory; and an additional cause of action for and a defense of bad
faith on the part of the plaintiff, which had allegedly accelerated
one of the defendant's installment debts, in cooperation with
another bank, merely because that defendant opposed the plaintiff
in the present litigation.

 To the defendants' motion for reconsideration and its
supplemental answer and counterclaim, the plaintiff filed a motion
requesting: (1) that the motion for reconsideration be denied; and
(2) that the supplemental answer and counterclaim "be dismissed."

 On June 8, 1990, the trial court called for hearing the
defendants' motion for reconsideration. The court denied the
relief requested in the motion in a document entitled "Partial
Summary Judgment." The document repeats the substance of the
court's earlier "Partial Summary Judgment" but adds a provision
severing the defendants' new "bad faith" claim against the
plaintiff. 

 The two documents which are said to constitute the
judgment in the cause, each being entitled "Partial Summary
Judgment," expressly deny all relief requested to the extent relief
is not granted in the documents.



DISCUSSION AND HOLDINGS


 In the defendants' appeal, they contend in their first
point of error that the trial court was not authorized to dismiss
"with prejudice" their counterclaims against the plaintiff in the
absence of a motion for summary judgment requesting that relief. As indicated above, the plaintiff never moved for summary
judgment regarding the defendants' claims against the plaintiff
seeking money damages and other relief; rather, the plaintiff moved
for summary judgment only on its cause of action against the
defendants on their guarantees. "It is axiomatic that one may not
be granted judgment as a matter of law on a cause of action not
addressed in a summary judgment proceeding." Chessher v.
Southwestern Bell Telephone Co., 658 S.W.2d 563, 564 (Tex. 1983). (1)

 To avoid the legal effect of the axiom, the plaintiff
argues that the issues involved in the defendants' counterclaims
were necessarily decided against them, as a matter of law, simply
by the trial court's decision to award the plaintiff summary
judgment in the face of the defendants' affirmative defenses then
on file -- an "implied" adjudication, perhaps, of the defendants'
causes of action, upon which the trial court was entitled to
dismiss "with prejudice" the defendants' causes of action against
the plaintiff. 

 If one assumes the identity of issues that the foregoing
theory requires, which we do for purposes of discussion only, the
fact remains that the plaintiff never moved for summary judgment
that the defendants take nothing by their causes of action or that
these be "dismissed" for some reason "with prejudice." We are not
aware of any power in the trial court to dismiss sua sponte, and
"with prejudice," a pleaded cause of action. We believe that the
terms of Tex. R. Civ. P. Ann. 166a(b) (Supp. 1991), upon which the
judgment rests in this case, contradict that theory and the theory
of implied adjudication which the plaintiff urges. The quotation
above from Chessher also rejects the latter theory. The rule
authorizes a party against whom a counterclaim is asserted to move
for summary judgment; and this implies a necessity for such a
motion before a court can award summary judgment against a
counterclaim. We hold accordingly.

 In addition, the plaintiff argues that the defendants
waived their complaint by not objecting in the trial court
concerning that court's sua sponte dismissal of the counterclaims
"with prejudice," citing Tex. R. App. P. Ann. 52(a) (Pamph. 1991). 
We hold no such objection or complaint was required in the present
case in order to preserve error. We cannot sustain a theory of
waiver based upon a party's failure to object to a matter
concerning which his opponent's motion for summary judgment is
silent, and based upon a court's misuse of Rule 166a to award a
summary judgment without a motion therefor to which a response
could be filed. See El Paso Assoc. v. J. R. Thurman & Co., 786
S.W.2d 17, 19-20 (Tex. App. 1990, no writ); Sumerlin v. Houston
Title Co., 808 S.W.2d 724, 726 (Tex. App. 1991, writ requested).

 Because we determine that the trial court improperly
dismissed the defendants' countercliams, the summary judgment is,
in effect, interlocutory. Teer v. Duddlesten, 664 S.W.2d 702 (Tex.
1984). We will not dismiss the appeal for want of jurisdiction
because the judgment from which the defendants appeal expressly
disposed of all parties and issues. Id. at 703-704; Schlipf v.
Exxon Corp., 644 S.W.2d 453 (Tex. 1982); cf. City of Beaumont v.
Guillory, 751 S.W.2d 491 (Tex. 1988); 410/West Ave. Ltd. v. Texas
Trust Sav., 810 S.W.2d 422 (Tex. App. 1991, no writ). We hold
accordingly.

 The plaintiff was not entitled to summary judgment for an
additional reason: the record will not permit a determination, as
a matter of law, that the plaintiff was the owner of the debt
evidenced by the note dated February 12, 1988. (2)

 The note is payable to the order of First RepublicBank
Austin, N.A. The reverse of the note shows two writings that were
apparently intended to be "endorsements." In the first, the payee,
First RepublicBank Austin, N.A., directed: "Pay to the Order of
Federal Reserve Bank--Dallas." There is no similar writing on the
note or elsewhere in the summary-judgment record that purports to
transfer title from the Federal Reserve Bank--Dallas to anyone. 
Nevertheless, the reverse of the note also contains a direction by
the Federal Deposit Insurance Corporation, as receiver for "First
RepublicBank Austin" (sic), directing: "Pay to the Order of NCNB
Texas National Bank, Without Recourse or Warranty." 

 The defendants contend the "gap" in the chain of
transfers precluded a determination, as a matter of law, that the
plaintiff (NCNB Texas National Bank), was the owner of the debt
evidenced by the note. That is to say, they rest their contention
on the fact that nothing on the note or elsewhere in the record
indicates that title ever left the Federal Reserve Bank--Dallas, to
which it had evidently been transferred by the First RepublicBank
Austin, N.A. before its receivership.

 The plaintiff purported to explain this "gap" in the
chain of title by the affidavit of Randall A. Gray, an officer of
the plaintiff bank who had also been an officer of the First
RepublicBank of Austin, N.A. before it entered into receivership. 
He swore that the First RepublicBank Austin, N.A. borrowed money
from the Federal Reserve Bank--Dallas, which required the bank "to
pledge the notes . . . which had not matured and had not been
adversely rated"; and when a note matured or became adversely
rated, it "was released from the pledge." Nevertheless, the
affidavit declares, "[t]he pledged notes were at all times in the
custody and control of" the bank. When the note in question
matured on or about May 12, 1988, the affidavit continued, the note
"was then an asset of" the bank because it was "no longer
acceptable as collateral by the Federal Reserve Bank--Dallas." 
Thus, "[t]he note . . . was an asset of" the bank when, on July 29,
1988, that bank "was declared insolvent by the Comptroller of the
Currency." The Federal Deposit Insurance Corporation, acting as
receiver for the insolvent bank, then assigned the note to the JRB
Bridge Bank, N.A., the name of which was changed to that now borne
by the plaintiff: "NCNB Texas National Bank."

 The Gray affidavit thus sets up a theory that the First
RepublicBank Austin, N.A. never actually parted with possession of
or title to the note and underlying debt, contrary to the writing
on the reverse of the note purporting to be an "endorsement" of the
note to the Federal Reserve Bank--Dallas. Thus, the note and debt
remained susceptible of assignment to the plaintiff by the Federal
Deposit Insurance Corporation, as receiver for the First
RepublicBank Austin, N.A. The Gray affidavit and another by Thomas
Newton declare that this assignment did in fact occur, and both
declare a conclusion of law and fact that the plaintiff is the
"owner" and "holder" of the note. The plain fact remains, however,
that the plaintiff could not receive title to the note and debt
unless title did rest in the First RepublicBank Austin, N.A., so
that it might be susceptible of transfer by the Federal Deposit
Insurance Corporation as receiver. The record does not show this
proposition as a matter of law.

 We should first say that the note was not a "negotiable
instrument" susceptible of "endorsement" in the strict sense of the
word. The attribute of negotiability was defeated by the provision
in the note for a variable interest rate, measured by the "Lender's
Prime Rate Plus 2.00%," because this precluded the calculation of
"a sum certain in money." Tex. Bus. & Comm. Code Ann. §§ 3.104(a),
3.106 (1968); Brazos River Authority v. Carr, 405 S.W.2d 689, 695
(Tex. 1966); Lexington Ins. Co. v. Gray, 775 S.W.2d 679, 682 (Tex.
App. 1989, writ denied); Annot., 69 A.L.R. 4th 1127, 1131-33
(1989).

 Because the note was not a negotiable instrument, it was
not susceptible of transfer by "endorsement" so as to create in the
transferee a presumption of ownership. See Tex. Bus. & Comm. Code,
supra, § 3.201. The non-negotiable note remained susceptible of
"assignment," however, as in the case of any other chose in action. 
10 C.J.S. Bills and Notes § 28, 437-38 (1938); see Lexington Ins.
Co., 775 S.W.2d at 682. In that connection, the purported
endorsement to the Federal Reserve Bank--Dallas, on the reverse of
the note, constituted evidence of an assignment of title to the
Federal Reserve Bank--Dallas. It may even have been sufficient to
establish a prima-facie title, not in the plaintiff but in the
Federal Reserve Bank--Dallas. See Carter v. Eames, 44 Tex. 544,
547 (1876).

 To negate the apparent assignment to the Federal Reserve
Bank--Dallas, the plaintiff offered the affidavit of Mr. Gray. His
affidavit purported to describe the intention of one party to the
transaction--the First RepublicBank Austin, N.A.--and omits to
impute any intention (3)
 to the Federal Reserve Bank--Dallas, the
transferee under the "endorsement." Mr. Gray swore that the First
RepublicBank Austin, N.A., at least, intended to "pledge" the note
to the Federal Reserve Bank--Dallas as security under an
arrangement for borrowing money from that bank. Simultaneously,
however, Mr. Gray declares the note "was at all times . . . an
asset of and in possession of" the First RepublicBank Austin, N.A.
until its receivership, and that the "pledged notes were at all
times in the custody and control of" that bank. 

 Thus, the affidavit contradicts itself in the most basic
particular: the very "pledge" it describes required a transfer of
possession, and nothing in the affidavit purports to explain the
contradictory statement that the bank retained possession at all
times. See 6A C.J.S. Assignments § 5, at 596 (1975). 

 Moreover, the penultimate paragraph of the affidavit
declares: "But for the pledging of said Note as security for loans
from Federal Reserve Bank--Dallas, said note had not . . . been
sold, negotiated or in any other form or fashion been conveyed to
anyone else" before the insolvency of First RepublicBank Austin,
N.A. The expression "but for" implies that the note was sold,
negotiated, or in some manner "conveyed" to the Federal Reserve
Bank--Dallas, thus augmenting the evidence of an assignment to the
Federal Reserve Bank--Dallas as this is reflected on the reverse of
the note. And if the trier of fact should believe that there was
an assignment to the Federal Reserve Bank--Dallas, title to the
note and underlying debt could be shown in the First RepublicBank
Austin, N.A. only if the record also shows that title had somehow
left the Federal Reserve Bank--Dallas so that First RepublicBank
Austin, N.A. might acquire it for subsequent assignment by the
Federal Deposit Insurance Corporation to the plaintiff. In this
respect the record is silent.

 For the foregoing reasons, we hold the summary-judgment
record does not establish as a matter of law that the plaintiff
owned the debt evidenced by the note of February 12, 1988.

 We reverse the summary judgment and remand the cause to
the district court.



 
 John Powers, Justice

[Before Justices Powers, Aboussie and Kidd; Justice Kidd

 not participating]

Reversed and Remanded

Filed: August 30, 1991

[Publish]
1.   We have added the emphasis in each quotation in the
opinion.

2.   In our discussion, we assume the summary-judgment record to
be sufficient to show a transfer of the defendants' guarantees to
the plaintiff, the obligation on which they were sued. We express
no opinion in that regard, however. Nor do we express an opinion
on the fact that the record appears to be silent with respect to
whether the maker of the note was notified of any assignment of his
debt, and the effect this might have on the guarantee obligations
which were made assignable by their terms. These issues are not
before us.
3.   This would appear necessary to establish an identical
intent in both parties to the transaction, but we need not
speculate in that regard.